1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CRISTY MCDOWELL,

11              Plaintiff,                    No. CIV S-09-1293 DAD

12       vs.

13   MICHAEL J. ASTRUE,                       ORDER
     Commissioner of Social Security,
14
                Defendant.
15   _____/

16              This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's amended motion for summary judgment and defendant's cross-motion for

18   summary judgment.  For the reasons explained below, plaintiff's motion is granted, the decision

19   of the Commissioner of Social Security (the Commissioner) is reversed, and the matter is

20   remanded for further proceedings consistent with this order.

21                            **PROCEDURAL BACKGROUND**

22              On April 12, 2006, plaintiff Cristy McDowell applied for Supplemental Security

23   Income (SSI) under Title XVI of the Social Security Act (the Act), alleging that she became

24   disabled in February 2005.  (Transcript (Tr.) at 77-82, 85.)  Plaintiff claimed disability based on

25   migraines, lower back pain, nerve problems in her right leg, and depression.  (Tr. at 90.)

26   Plaintiff's application was denied initially in November 2006 and upon reconsideration in July

                                              1

2007.  (Tr. at 56-61, 63-68.)  At the hearing held on April 25, 2008, plaintiff appeared without a

representative and testified, as did her witness, Larry Gillam.  (Tr. at 31-53, 69-76.)  In a decision

dated September 18, 2008, the ALJ found plaintiff not disabled.  (Tr. at 8-14.)  The ALJ entered

the following findings:

> 1.  The claimant has not engaged in substantial gainful activity
> since April 12, 2006, the application date (20 CFR 416.920(b) and
> 416.971 *et seq.*).
>
> 2.  The claimant has the following severe impairments:  a seizure
> disorder; a history of Migraine headaches; and degenerative joint
> disease (20 CFR 416.920(c)).
>
> 3.  The claimant has not had an impairment or combination of
> impairments that meets or medically equals one of the listed
> impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
> 416.920(d), 416.925 and 416.926).
>
> 4.  After careful consideration of the entire record, the undersigned
> finds that the claimant has had the residual functional capacity to
> perform light work as defined in 20 CFR 416.967(b) except for the
> following:  unable to climb ladders, ropes, and scaffolds; and
> unable to work in especially hazardous settings, such as work at
> unprotected heights or near dangerous, moving machinery.
>
> 5.  The claimant has been unable to perform her past relevant work
> (20 CFR 416.965).
>
> 6.  The claimant was born January 9, 1968 and was 38 years old,
> which is defined as a younger individual age 18-49, on the date the
> application was filed (20 CFR 416.963).
>
> 7.  The claimant has at least a high school education and is able to
> communicate in English (20 CFR 416.964).
>
> 8.  Transferability of job skills is not material to the determination
> of disability because using the Medical-Vocational Rules as a
> framework supports a finding that the claimant is "not disabled,"
> whether or not the claimant has transferable job skills (See SSR
> 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 9.  Considering the claimant's age, education, work experience,
> and residual functional capacity, there have been jobs that exist in
> significant numbers in the national economy that the claimant
> could have performed (20 CFR 416.960(c) and 416.966).

/////

/////

1      10. The claimant has not been under a disability, as defined in the
       Social Security Act, since April 12, 2006, the date the application
2      was filed (20 CFR 416.920(g)).

3   (Tr. at 10-14.)

4          In November 2008, plaintiff obtained counsel, who requested review of the ALJ's

5   decision. (Tr. at 15-18.) On March 11, 2009, the Appeals Council denied the request for review,

6   thereby making the ALJ's decision the final decision of the Commissioner. (Tr. at 1-4.) Plaintiff

7   sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on

8   May 8, 2009.

9                                   **LEGAL STANDARD**

10         The Commissioner's decision that a claimant is not disabled will be upheld if the

11  findings of fact are supported by substantial evidence in the record as a whole and the proper

12  legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

13  (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

14  The findings of the Commissioner as to any fact, if supported by substantial evidence, are

15  conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such

16  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

17  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

18  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

19  (1971)).

20         A reviewing court must consider the record as a whole, weighing both the

21  evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d

22  at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of

23  supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If

24  substantial evidence supports the administrative findings, or if there is conflicting evidence

25  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

26  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff presents two arguments in her motion for summary judgment:  (1) the ALJ failed to credit her testimony and third-party statements without a legitimate basis for doing so and (2) the ALJ failed to properly assess her residual functional capacity (RFC) and utilize the services of a vocational expert.  These arguments are addressed below.

1    The arguments before the court challenge the ALJ's step four and step five

2    determinations that (1) plaintiff has the RFC to perform light work, except for work that requires

3    climbing ladders, ropes and scaffolds, and work that requires especially hazardous settings, and

4    (2) the grids indicate that there are jobs in significant numbers in the national economy that

5    plaintiff could perform with this RFC.

6    A claimant's RFC is "the most [the claimant] can still do despite [his or her]

7    limitations." 20 C.F.R. § 404.1545(a).  The assessment of RFC must be "based on all the

8    relevant evidence in [the claimant's] case record."  Id.  See also Mayes v. Massanari, 276 F.3d

9    453, 460 (9th Cir. 2001).  Plaintiff contends that the ALJ's failure to credit her own testimony

10   and the statements and testimony of several third parties resulted in an assessment of her RFC

11   that was not based on all the relevant evidence and led to the erroneous use of the grids despite

12   substantial evidence of non-exertional limitations.  The court agrees with both contentions.

13   **I.  <u>Testimony and Third-Party Statements</u>**

14   Once a claimant has presented objective medical evidence of an underlying

15   impairment that could reasonably be expected to produce some degree of the pain or other

16   symptoms alleged, the ALJ may not discredit the claimant's own testimony as to the severity of

17   her symptoms merely because the degree of severity is unsupported by objective medical

18   evidence.  Lingenfelter v. Astrue, 504 F.3d 1023, 1035-36 (9th Cir. 2007); Reddick v. Chater,

19   157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

20   "'[T]he ALJ can reject the claimant's testimony about the severity of [his] symptoms only by

21   offering specific, clear and convincing reasons for doing so.'"  Light, 119 F.3d at 792 (quoting

22   Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).  See also Morgan, 169 F.3d at 599;

23   Reddick, 157 F.3d at 722; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller,

24   770 F.2d at 848).

25   In evaluating a claimant's subjective testimony regarding pain and the severity of

26   his symptoms, the ALJ may consider the presence or absence of supporting objective medical

1   evidence along with many other factors.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991)

2   (en banc); Smolen, 80 F.3d at 1285.  The ALJ may also rely in part on his or her own

3   observations.  Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989).  However, the ALJ cannot

4   substitute such observations for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6

5   (9th Cir. 1990).

6            With respect to daily activities, it is well established that social security claimants

7   need not be "utterly incapacitated to be eligible for benefits."  Fair v. Bowen, 885 F.2d 597, 603

8   (9th Cir. 1989).  See also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v.

9   Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere

10  fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car,

11  or limited walking for exercise, does not in any way detract from her credibility as to her overall

12  disability.").  In general, the Commissioner does not consider "activities like taking care of

13  yourself, household tasks, hobbies, therapy, school attendance, club activities, or social

14  programs" to be substantial gainful activities.  20 C.F.R. § 404.1572(c).  See also 20 C.F.R. §

15  404.1545(e).  Daily activities may be grounds for an adverse credibility finding if a claimant is

16  able to spend a substantial part of his day engaged in pursuits involving the performance of

17  physical functions that are transferable to a work setting.  Orn v. Astrue, 495 F.3d 625, 639 (9th

18  Cir. 2007).  In order to conclude that the claimant's activities warrant an adverse credibility

19  determination, however, the ALJ must make specific findings relating to the claimant's daily

20  activities and the transferability of those activities to the work setting.  Id.

21           The testimony of lay witnesses, including family members and friends, reflecting

22  their own observations of how the claimant's impairments affect her activities must be

23  considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

24  2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232.  Persons who see the claimant on a

25  daily basis are competent to testify as to their observations.  Regennitter v. Comm'r of Soc. Sec.

26  Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir.

1993).  If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness.  <u>Regennitter</u>, 166 F.3d at 1298; <u>Dodrill</u>, 12 F.3d at 919.  The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony.  <u>Regennitter</u>, 166 F.3d at 1298; <u>Smolen</u>, 80 F.3d at 1289.  Nor does the fact that medical records do not corroborate the testimony provide a proper basis for rejecting such testimony.  <u>Smolen</u>, 80 F.3d at 1289.  It is especially important for the ALJ to consider lay witness testimony from third parties where a claimant alleges symptoms not supported by medical evidence in the file and the third parties have knowledge of the claimant's daily activities.  20 C.F.R. § 404.1513(e)(2); SSR 88-13.

Questions of credibility and the resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner.  <u>Morgan</u>, 169 F.3d at 599.  The determination of credibility is said to be a function of the ALJ acting on behalf of the Commissioner.  <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  As a general rule, an ALJ's assessment of credibility should be given great weight.  <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985).  Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness.  <u>Fair</u>, 885 F.2d at 604 n.5.  Absent affirmative evidence of malingering, however, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing.  <u>Morgan</u>, 169 F.3d at 599.

Here, the record includes plaintiff's own written statements (tr. at 97-104, 113-24, 133-35) and hearing testimony (tr. at 33-46, 48-50), a third-party function report by Barbara Gillam (tr. at 105-12), a written statement by Gerald L. Fisher (tr. at 140), a written statement by Irene Turner (tr. at 62), and the testimony of Larry Gillam (tr. at 46[1]-48).

The ALJ acknowledged the standards applicable to subjective evidence and noted his duty to make a finding on the credibility of the testimony and statements in the record.  (Tr. at

---

[1]  The transcript contains the erroneous heading "EXAMINATION OF VOCATIONAL EXPERT" at the beginning of Mr. Gillam's testimony.  (Tr. at 46.)

1    11-12.)  The ALJ commenced his analysis of the subjective evidence by noting that

2    "[t]hroughout the record, the claimant has complained of marked limitation in her functioning

3    due to multiple symptoms, including seizures, headaches, joint pain, anxiety, and depression."

4    (Tr. at 12.)  The ALJ turned to the function report form completed by plaintiff's friend Barbara

5    Gillam in 2006 and found that Ms. Gillam described the same symptoms complained of by

6    plaintiff.  Ms. Gillam noted that plaintiff has frequently required urgent care for her migraine

7    headaches and has problems with anxiety and in maintaining attention.  (Tr. at 12 (citing Exhibit

8    4E [tr. at 105-112].)  The ALJ found medical records documenting plaintiff's multiple visits to

9    urgent care and emergency rooms for treatment of migraine headaches, and her consistent need

10   for narcotics-based pain medication.  (Tr. at 12 (citing record).)  These findings suggest a

11   conclusion that plaintiff's symptoms and her complaints regarding the severity of those

12   symptoms are supported by third-party observations and corroborated by objective medical

13   evidence.  However, the ALJ continued as follows:

14           On the other hand, the record reflects that the claimant has
             persisted in smoking (e.g. Exhibit 19F/2 [tr. at 401]), a
15           circumstance somewhat adverse to the credibility of the claimant's
             pursuit of better health, in particular in consideration of her
16           complaints of Migraine headaches.

17   (Tr. at 12.)  This gratuitous personal judgment about smoking concluded the ALJ's discussion of

18   plaintiff's symptoms, as he then turned to a discussion of the opinion evidence, marking the

19   transition with the phrase "in any event."

20           The ALJ did not consider plaintiff's own testimony and statements, the testimony

21   of Larry Gillam, or the statements of Mr. Fish and Ms. Turner.  Mr. Gillam, who sees plaintiff

22   everyday, described the visible physical effects of migraine headaches on plaintiff, explained that

23   he had taken her to the emergency room several times and sat with her there for several hours,

24   stated that he had seen the effect of Demerol in eliminating the need for emergency room visits at

25   the expense of rendering plaintiff unable to function, and estimating that she has such headaches

26   up to two times per week and has them at least twice per month.  (Tr. at 46-48.)  Mr. Fish is a

home instruction teacher who had been visiting plaintiff's home daily, five days a week, for seven months for the purpose of providing home instruction for plaintiff's son. (Tr. at 140.) Ms. Turner, plaintiff's neighbor, stated that she sometimes took plaintiff to her doctors' offices and picked her up from there, described the severity of plaintiff's headaches and the pain, stiffness and aching plaintiff suffered in her right leg and back, and commented that "[s]he is only 38 years old and it's like she is trapped in the body of a 50 year old." (Tr. at 62.)

The court finds that the ALJ erred in tacitly rejecting plaintiff's testimony and written statements about the severity of her symptoms. Plaintiff's habit of smoking certainly did not provide a specific, clear and convincing reason for rejecting plaintiff's subjective evidence or the statements of Barbara Gillam. The ALJ also erred in failing to consider and discuss the plainly competent testimony and statements by Mr. Gillam, Mr. Fish, and Ms. Turner. Because the ALJ did not provide clear and convincing reasons for finding plaintiff's testimony not credible, for disregarding the third-party statement by Ms. Gillam, or for failing to consider other third-party statements and testimony at all, substantial evidence does not support the ALJ's assessment that plaintiff is capable of performing light work with minor restrictions. Plaintiff is therefore entitled to summary judgment on her argument that the ALJ failed to credit her testimony and third-party statements without a legitimate basis for doing so.

**II.  Use of the Grids**

After determining that plaintiff had the residual functional capacity to perform light work with a few limitations that had "little or no effect on the occupational base of unskilled light work," the ALJ found it appropriate to apply the Medical-Vocational Guidelines. (Tr. at 13-14.) Plaintiff contends that the ALJ failed to properly assess plaintiff's RFC and erred in failing to utilize the services of a vocational expert. The court agrees.

"The grids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment." Burkhart, 856 F.2d at 1340. The grids reflect "major functional and vocational patterns" and incorporate the analysis of critical

vocational factors, i.e., age, education, and work experience, in combination with the individual's residual functional capacity.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a).  The grids may be utilized when they "'accurately and completely describe the claimant's abilities and limitations.'" Burkhart, 856 F.2d at 1340 (quoting Jones, 760 F.2d at 998).  "When a claimant's nonexertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. . . .  In such instances, the Secretary must take the testimony of a vocational expert and identify specific jobs within the claimant's capabilities."  Burkhart, 856 F.2d at 1340 (quoting Desrosiers v. Sec'y of Health & Human Svcs., 846 F.2d 573, 577 (9th Cir. 1988)).  See also Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (holding that "an ALJ may rely solely on the Medical-Vocational Guidelines (the 'grids') only when a claimant can perform the full range of applicable work" and the ALJ erred in failing to obtain the testimony of a vocational expert).

Here, the court has determined that plaintiff is entitled to summary judgment on her claim that the ALJ failed to properly evaluate and credit plaintiff's testimony and the third-party statements and testimony discussed supra.  The ALJ's errors led to an erroneous conclusion that plaintiff has the ability to perform virtually the full range of light work.  If plaintiff's testimony and the third-party statements and testimony are properly credited, use of the grids will be inappropriate and the services of a vocational expert will be required in order to determine whether plaintiff is capable of performing any work on a sustained basis.  The court therefore finds that plaintiff is also entitled to summary judgment on her claim that the ALJ erred in using the grids and failing to secure the testimony of a vocational expert.

## CONCLUSION

The court finds that remand is required so that the ALJ can reassess plaintiff's RFC after properly  crediting plaintiff's subjective symptom testimony and the corroborating statements and testimony of third parties.  If the sequential evaluation proceeds to step five, the ALJ shall hold a new hearing at which the testimony of a vocational expert is secured.

1      Accordingly, IT IS HEREBY ORDERED that:

2          1.  Plaintiff's amended motion for summary judgment (Doc. No. 21) is granted;

3          2.  Defendant's cross-motion for summary judgment (Doc. No. 23) is denied;

4          3.  The decision of the Commissioner of Social Security is reversed; and

5          4.  This case is remanded for further proceedings consistent with this order.

6  DATED: September 30, 2010.

7

8      _____

9      DALE A. DROZD
       UNITED STATES MAGISTRATE JUDGE

10  DAD:kw
    Ddad1/orders.socsec/mcdowell1293.order

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26